IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 105 MR WCM

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| LEES-MCRAE COLLEGE, | ) | |
| *a North Carolina Corporation* | ) | |
| LEE KING, | ) | |
| *individually and in his official capacity,* | ) | |
| JON DRIGGERS, | ) | |
| *individually and in his official capacity,* | ) | |
| JOSHUA GAISSER,* | ) | |
| *individually and in his official capacity* | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative, to Strike (the "Motion," Doc. 17), which has been referred to the undersigned pursuant to 28 U.S.C. § 636. The Motion is fully briefed. Docs. 20, 21, 22.

## I. Factual Background[1]

Plaintiff's First Amended Complaint alleges as follows:

---

[1] Plaintiff alleges that the Court has subject matter jurisdiction pursuant to both 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Doc. 13.

1

Plaintiff John Doe ("Plaintiff") suffers from Attention Deficit and Hyperactive Disorder ("ADHD"). Doc. 13 at ¶ 20. Plaintiff experiences many common symptoms of ADHD, including "difficulty paying attention, hyperactivity, and impulsive behavior" as well as "impulsiveness, disorganization, problems prioritizing, poor time management skills, lack of focus, excessive activity and restlessness, low frustration tolerance, frequent mood swings, hot temper, trouble coping with stress, and high levels of anxiety." Id. at ¶ 21.

Plaintiff alleges that Defendant Lees-McRae College ("LMC") was aware of his condition and that he decided to enroll based on "specific promises, representations, and assurances" by the school that it would accommodate Plaintiff's disability. Id. at ¶¶ 20, 22.

Plaintiff began his education at LMC in the Fall of 2017. Id. at ¶ 23. During the 2017-2018 school year, a conflict arose between Plaintiff and the manager of the LMC cafeteria. Id. at ¶ 24. The cafeteria provided take-out trays to students, and Plaintiff would take one, or, occasionally, two trays of take-out food to his dorm room. Id. at ¶ 26. The cafeteria manager "began stalking and harassing Plaintiff," accusing him of "stealing food," and following and watching Plaintiff in the cafeteria. Id. at ¶ 27.

Plaintiff felt he needed assistance with the situation, approached Joshua Gaisser ("Gaisser"), the Associate Dean of Students at LMC,

"expressed his discomfort and perceived inability to deal with [the situation] on his own, and asked Gaisser to intervene on his behalf." Id. at ¶ 28. Gaisser declined to do so, and the situation with the cafeteria manager escalated. Id.

Plaintiff continued to report problems with the cafeteria manager to Gaisser and requested "the accommodation of Gaisser's help in resolving the situation." Id. at ¶ 29. In doing so, Plaintiff brought up what he perceived to be a similar case involving another student with special needs – Shelby Cash[2] – who was "denied protection from the Dean of Students." Id. When Plaintiff brought up the Cash matter, "Gaisser became very hostile and angry." Id.

On or about February 7, 2018, following "another such incident" with the cafeteria manager, Plaintiff "yelled, 'Leave me alone!' at the cafeteria manager, and bolted from the cafeteria." Id. at ¶ 30.

On February 13, 2018, Plaintiff was notified of disciplinary proceedings regarding his outburst. Id. at ¶ 31. Plaintiff alleges upon information and belief that Gaisser initiated the proceeding because he was annoyed that Plaintiff requested that Gaisser's office intervene on his behalf and because Plaintiff had brought up the Cash case. Id. at ¶ 32.

---

[2] Cash sued LMC in Cash v. Lees-McRae Coll., Inc., No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), aff'd, 811 Fed. Appx 190 (4th Cir. 2020).

Plaintiff further alleges upon information and belief that Gaisser's annoyance with Plaintiff's requests for assistance "evolved into a conviction that Plaintiff was 'a problem,' and a vendetta with the goal of dismissing Plaintiff" from LMC. Id.

As a result of the disciplinary proceeding regarding his outburst in the cafeteria, Plaintiff was placed on probation until December 2018. Id. at ¶ 33. Plaintiff had no further incidents and continued to improve socially and academically. Id. However, because of the "unpleasantness in the cafeteria and the unwarranted disciplinary consequences," Plaintiff stopped going to the cafeteria on a regular basis. Id. at ¶ 34. Plaintiff and his parents requested that Jon Driggers ("Driggers"), the LMC Dean of Students, excuse Plaintiff from paying for an LMC cafeteria meal plan at the beginning of the 2018 academic year, but that request was denied. Id. at ¶ 34.

Plaintiff alleges that by the "Spring of 2019"[3] he "had shown considerable improvement in his studies, was well-liked by his professors, and had made many friends. Plaintiff's special needs, due to his disabilities, were being recognized and accommodated by LMC and its staff." Id. at ¶ 35.

On January 31, 2019, a female student in Plaintiff's Spanish class, K.H., began verbally harassing Plaintiff, using "a loud and intimidating tone." Id. at ¶¶ 36-37. In response, Plaintiff made "a singular, graphic

[3] The undersigned assumes Plaintiff is referring to the Spring semester.

4

comment" in a "low tone." Id. at ¶ 38. K.H. "escalated the situation" and went on "a loud tirade in front of the other students and the professor, directed at the Plaintiff." Id. at ¶ 39. Plaintiff apologized but K.H. "continued berating and taunting him in front of the class." Id. at ¶ 40.

The Spanish instructor took Plaintiff to the hallway, discussed the incident, and suggested that Plaintiff apologize again, which Plaintiff did. Id. at 7 ¶¶ 42-43. Afterward, K.H. and her friends sent Plaintiff messages that Plaintiff alleges upon information and belief "were intended to harass Plaintiff and to cause Plaintiff continued angst and stress." Id. at ¶ 44. "The messages were strange, vaguely threatening, and contained explicit sexual overtures." Id. Plaintiff alleges that this "retaliation" was in violation of LMC's Code of Student Conduct. Id. at ¶ 45.

On February 4, 2019, LMC sent Plaintiff an email advising him that a complaint had been filed against him and that a hearing would be held on February 6, 2019. Id. at ¶ 46. Plaintiff did not immediately receive the email but learned about the hearing from his Spanish teacher on February 5, 2019. Id. at ¶ 47. Plaintiff then approached Gaisser, asked for an explanation, expressed that he needed additional time and assistance responding, and requested that his Spanish teacher be allowed to attend the hearing as a witness. Id. at ¶ 48. Gaisser denied these requests despite knowing about Plaintiff's ADHD and associated limitations. Id.

Plaintiff was "unprepared, anxious, and significantly limited by his disabilities" when he appeared for his hearing on February 6, 2019. Id. at ¶ 50. Plaintiff alleges that despite knowing of his disabilities, none of the defendants provided him "with assistance or accommodations necessary to enable him to fully and fairly respond to the allegations." Id. He also alleges that the denial of his request that his Spanish teacher be allowed to appear was in contravention of a written policy in the LMC Student Handbook that allowed a student to bring witnesses to such a hearing. Id. at ¶ 51.

Plaintiff was charged with harassment, and he was accused of being disorderly and dangerously disruptive. Id. at 7-8 ¶ 52. Plaintiff alleges that his Spanish instructor "would conclusively have refuted" these charges. Id.

Plaintiff was found guilty and the hearing panel decided that he should be suspended from LMC for seven months. Id. at 8 ¶ 53.

Plaintiff appealed the decision to Driggers. Id. at ¶ 54. Plaintiff does not know whether an appellate hearing took place before a panel or whether Driggers "unilaterally decided the outcome," but Plaintiff nonetheless alleges that the process "was unfair, improper, and violated Plaintiff's rights" for various reasons including: supportive emails from Plaintiff's family were not included in Plaintiff's file; Plaintiff's Spanish teacher was once again not allowed to attend; Plaintiff was not allowed to attend; Plaintiff was rushed

with less than twenty-four (24) hours to appeal; and Plaintiff was not provided any assistance despite his disability. Id. at ¶ 55.

Plaintiff submitted a final appeal to Lee King ("King"), the President of LMC, which was summarily denied. Id. at ¶ 43. Plaintiff then withdrew from LMC. Id. at 8-9 ¶ 44. Plaintiff alleges that his withdrawal constituted a constructive discharge and that LMC refused to refund the tuition, fees, and expenses that Plaintiff had paid. Id.

## II. Motion to Dismiss

### A. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is

7

plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>accord</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. <u>Twombly</u>, 550 U.S. at 570; <u>Consumeraffairs.com</u>, 591 F.3d at 256.

### B. Discussion

Plaintiff's First Amended Complaint contains the following claims: (1) Count I for violations of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") and Title III of the Americans with Disabilities Act ("ADA") against all Defendants; (2) Count II for negligence against all Defendants; (3) Count III for intentional or negligent infliction of emotional harm against all Defendants; and (4) Count IV for "fraud in the inducement/breach of contract" against LMC.

### 1. ADA and Rehabilitation Act Claim

The undersigned reads Count I of the First Amended Complaint as combining four claims: a failure to accommodate claim under the ADA, a failure to accommodate claim under the Rehabilitation Act, an exclusion claim under the ADA, and an exclusion claim under the Rehabilitation Act.

8

Courts, "[t]o the extent possible . . . construe the ADA and Rehabilitation Act to impose similar requirements" and "despite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability." Halpern v. Wake Forest Univ. Health Sciences, 669 F.3d 454, 461 (4th Cir. 2012).

Therefore, this Memorandum considers Plaintiff's claims for failure to accommodate (under both the ADA and the Rehabilitation Act) and for exclusion (under both the ADA and the Rehabilitation Act) and focuses on the portion of each claim that Defendants argue Plaintiff has not met.[4]

### a.     Failure to Accommodate

Defendants state that "[t]o the extent a discrimination claim under the ADA or Rehabilitation Act is premised upon an alleged failure to accommodate a plaintiff must allege that he 'requested a reasonable accommodation that would not fundamentally alter the nature of defendant's service.'" Doc. 20 at 11 (quoting Norwood v. Oak Hill Acad., No. 7:17-cv-222, 2017 WL 8215919, at * 5 (W.D. Va. Dec. 22, 2017), report and

---

[4] Plaintiff also argues that under the McDonnell Douglas framwork, he "has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence," Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995), as amended (June 9, 1995), as amended (Mar. 14, 2008) and that having done so, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation." Id. Authorities indicate, however, that application of this framework is not appropriate at the motion to dismiss stage. See e.g., Meyer v. DynCorp Int'l, LLC, No. GJH-19-3412, 2020 WL 5513436 (D. Md. Sept. 14, 2020); McMillian v. Lab. Corp. of Am., 399 F. Supp. 2d 670, 674 (M.D.N.C. 2005).

9

recommendation adopted as modified, 2018 WL 1461503 (W.D. Va. March 23, 2018)); see also Meija v. Wal-Mart, No. 1:14cv237, 2014 WL 5531432, at *2 (M.D.N.C. Nov. 3, 2014), aff'd 599 Fed. Appx. 520 (4th Cir. 2015) (in employment discrimination action, in order to state a failure to accommodate claim, plaintiff must allege facts that "(1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) his employer refused to make such accommodations.") (citing Wilson v. Dollar General Corp., 717 F.3d 337, (4th Cir. 2013)). In particular, Defendants assert that the First Amended Complaint fails to identify or describe any requested accommodation that would have "actually accommodate[d] [Plaintiff's] disability . . .." Doc. 20 at 13.[5]

In the First Amended Complaint, Plaintiff alleges that he "felt he needed assistance with the situation involving the cafeteria manager," and therefore "asked Gaisser to intervene on his behalf." This allegation, standing alone, is quite general. See Meija, 2014 WL 5531432, at *3 (plaintiff's allegation that he requested that the store manager "fix the problem" was "at best" a "request for some unknown accommodation" that was too vague to survive motion to dismiss) (citing inter alia Cooper v.

_____

[5] Defendants tangentially reference the question of whether Plaintiff's requested accommodations would have "fundamentally altered" LMC's services but they do not elaborate on that issue.

<u>Community Haven for Adults & Children With Disabilities</u>, No. 8:12–CV–1041–T–33EAJ, 2013 WL 24240, at *7 (M.D.Fla. Jan. 2, 2013) (concluding that a request to "do it [d]ifferent" is insufficient to state a claim for failure to accommodate)).

However, Plaintiff also alleges that, with respect to the February 6, 2019 disciplinary hearing, he requested "an explanation of what was going on, expressed that he needed more time and assistance in responding and, specifically, asked to have the Spanish Instructor attend the hearing as a witness." Doc. 13 at 7 ¶ 48.

Considering these allegations, the undersigned is persuaded that Plaintiff's claim for violation of the ADA and Rehabilitation Act under a failure to accommodate theory should not be dismissed.

### b.    Exclusion

"In the context of a student excluded from an educational program, to prove a violation of either Act, the plaintiff must establish that (1) he has a disability, (2) he is otherwise qualified to participate in the defendant's program, and (3) he was excluded from the program on the basis of his disability." <u>Halpern</u>, 669 F.3d at 461.[6]

---

[6] Under the third element, the ADA requires a plaintiff to show that his disability was a "motivating cause" of the exclusion, while Section 504 of the Rehabilitation Act requires a showing that a plaintiff was excluded "solely by reason of his disability." <u>Halpern</u>, 669 F.3d at 461-462; <u>see also</u> <u>Atchison v. Board of Regents of</u>

11

Here, Defendants "assume[]" for purposes of the Motion to Dismiss that "Plaintiff has adequately alleged a disability and that he was otherwise qualified to participate at LMC." Doc. 20 at 12. Consequently, they focus their arguments on the third element. See Doc. 20 at 12.

Plaintiff alleges that the various disciplinary proceedings instituted against him were motivated by his requests for assistance. With respect to his difficulties with the cafeteria manager, Plaintiff alleges that Gaisser's institution of disciplinary proceedings was "entirely motivated by Gaisser's annoyance that Plaintiff had persisted in his requests that the Dean of Students intervene on his behalf…." Doc. 13 at 5-6 ¶ 32. Following the cafeteria incident, Plaintiff contends that "annoyance with Plaintiff's requests for accommodation of his emotional disabilities evolved into a conviction that Plaintiff was 'a problem,' and a vendetta with the goal of dismissing Plaintiff from" LMC. Doc. 13 at 6-7 ¶ 32.

With respect to the hearing related to charges of student misconduct occurring in Plaintiff's Spanish class, Plaintiff alleges that the "trumped up" charges brought against him would have been "conclusively…refuted" had his Spanish Instructor been allowed to testify, and that as a result of requesting

the University System of Georgia, No. 1:13cv2922, 2014 WL 12013430, at * 5 (N.D. Ga. Nov. 13, 2014) ("Because [plaintiff] fails to state claim for discrimination under Title II, [plaintiff] necessarily falls short of the even higher standard imposed by the Rehabilitation Act.").

accommodations with respect to the cafeteria manager, Gaisser and Driggers "took pains to distort Plaintiff's file, and ultimately to manufacture disciplinary charges..." Doc. 13 at 8 ¶ 52; 9 at ¶ 46. Plaintiff alleges that despite his troubles with disorganization, time management, anxiety, and stress, his request for an explanation regarding the student misconduct charges was denied, as was his request for more time and assistance in responding to those charges.

The Fourth Circuit has stated that "'misconduct—even misconduct related to a disability—is not itself a disability' and may be a basis for dismissal." Halpern, 669 F.3d at 465 (quoting Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 n. 3 (4th Cir.1997)).

Here, Plaintiff has alleged that he yelled at the cafeteria manager and that he "verbally retaliated" against a student in his Spanish class by using a "graphic comment." Doc. 13 at 5 ¶ 30; 6 ¶ 38. Yet, Plaintiff has also alleged that, notwithstanding his two "minor" disciplinary infractions, he was not given the same opportunities during the disciplinary process to address the charges against him that other students were afforded (such as by being denied the ability to call his Spanish Instructor as a witness at the hearing). Therefore, determining whether Plaintiff was suspended because of misconduct or because of his repeated requests for assistance and

accommodations related to his disability is difficult based on the current record.

Taking Plaintiff's allegations as true and construing them in the light most favorable to him, and further noting the conclusion above that Plaintiff's claim under a failure to accommodate theory is sufficient to survive the Motion to Dismiss, the undersigned is persuaded that Plaintiff's claim for exclusion should likewise be allowed to proceed at this stage. See Lawton v. Success Acad. Charter Sch., Inc., 323 F. Supp. 3d 353 (E.D.N.Y. 2018) (finding that plaintiffs stated claims under Rehabilitation Act where they alleged they were subjected to disciplinary actions because of their disabilities, and explaining that "Defendants' argument regarding their true motive for disciplining plaintiffs raises a factual dispute inappropriate for resolution on a Rule 12(b)(6) motion."); North v. Widener Univ., 869 F. Supp. 2d 630 (E.D. Pa. 2012) (student stated a claim under the Rehabilitation Act where he alleged that although other non-disabled students were allowed to retake examinations, he was not given that opportunity, and further alleged that he was given inadequate notice to request a hearing to remain in the educational program); see also Baird v. Rose, 192 F.3d 462, 468 n. 6 (4th Cir. 1999) (explaining that a determination of whether defendants excluded plaintiff based on a "neutral rule" equally applicable to everyone is inappropriate under Rule 12(b)(6)).

14

The undersigned will therefore recommend that Defendants' Motion to Dismiss Count I of the First Amended Complaint be denied on this basis as well.

## 2. Negligence

Negligence is "the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." McMurray v. Sur. Fed. Sav. & Loan Ass'n, 82 N.C.App. 729, 731, 348 S.E.2d 162, 164 (1986). The elements of a negligence claim are "the existence of a legal duty or obligation, breach of that duty, proximate cause and actual loss or damage." Id. "In a negligence action, there can be no liability if there is no duty owed by the defendant to the plaintiff." Williams v. Smith, 149 N.C.App. 855, 859, 561 S.E.2d 921, 923 (2002).

Defendants argue that Plaintiff's negligence claim fails as a matter of law because colleges and school officials owe no special duty of care to their students, and because the ADA and Rehabilitation Act do not supply a duty to support a negligence claim. Doc. 20 at 14. Defendants contend that the majority of Plaintiff's negligence allegations depend upon either the existence of a special relationship or a statutory duty, and that "[t]he remainder of Plaintiff's negligence allegations are impermissibly conclusory...." Id. at 16.

Plaintiff alleges that Defendants "collectively and/or individually owed Plaintiff the duties of keeping him safe from harassment, and to

accommodate, recognize, respect, and care for his ADHD condition and anxiety related needs, and to handle allegations against him properly." Doc. 13 at 11 ¶ 58. Additionally, Plaintiff alleges that "Defendant King, among other duties owed, had a duty to implement policy and procedure creating accommodations for students suffering from disabilities similar to Plaintiff's, and to take action when failures therein were discovered." Id. at ¶ 59. In his briefing, Plaintiff argues that Defendants "breached not only their common-law duty of reasonable care, but moreover their statutory duties under the ADA and Rehabilitation Act." Doc. 21 at 13.

It is not clear, however, that either the Rehabilitation Act or the ADA create an independent duty of care for purposes of a negligence claim. See Liese v. Indian River Cty. Hops. Dist., 701 F.3d 334, 352-53 (11th Cir. 2012); Strojnik v. Bakersfield Convention Hotel I, LLC, 436 F.Supp.3d 1332, 1344 (E.D. Ca. 2020) ("Plaintiff provides no authority, nor is the Court aware of any, to show that Congress enacted the ADA as a separate duty of care to give rise to an independent negligence claim under state laws."); James v. Peter Pan Transit Mgmt., Inc., No. 97-747, 1999 WL 735173, at * 9 (E.D.N.C. Jan. 20, 1999) (explaining that although a violation of a "safety statute" may be negligence per se under North Carolina law, "it is unlikely that the North Carolina courts would find that the ADA is a safety statute or that violation of the ADA constitutes negligence per se"); see also Cash v. Lees-McRae Coll.,

Inc., No. 1:18CV52, 2018 WL 7297876, at *14 (W.D.N.C. Aug. 13, 2018) ("To the extent that Plaintiff Cash alleges that Title IX supplies a duty actionable in negligence, she cannot plead such a claim"), report and recommendation adopted, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), aff'd, 811 Fed. Appx 190 (4th Cir. 2020).

Next, while under North Carolina law, "negligence may arise where a special relationship exists between the parties," Davidson v. Univ. of N. Carolina at Chapel Hill, 142 N.C.App. 544, 556, 543 S.E.2d 920, 928 (2001), "the student-university relationship, standing alone, does not constitute a special relationship giving rise to a duty of care." Davidson, 543 S.E.2d at 928; see also McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 996 (M.D.N.C. 2011), aff'd in part, rev'd in part, dismissed in part sub nom. Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012); see also McClean v. Duke University, 376 F.Supp.3d 585, 617-618 (M.D.N.C. 2019) (university owed no legal duty to plaintiff where plaintiff alleged University failed to act in response to plaintiff's complaint of assault and harassment).[7]

Consequently, to the extent Defendants owed a duty to Plaintiff, their duty was to "act as a reasonable and prudent person under the same or

_____

[7] Similarly, in so far as Plaintiff contends Defendants duties were created by LMC's Student Handbook, North Carolina courts have held that written policies and procedures "do not themselves establish a per se standard of due care." Hall v. Toreros, II, Inc., 176 N.C. App. 309, 316, 626 S.E.2d 861, 866 (2006).

similar circumstances." <u>Cash</u>, 2018 WL 7297876, at *13. However, Plaintiff's allegations in this regard are conclusory and do not provide sufficient factual support for such a claim. For example, although Plaintiff argues in his briefing that Defendants breached "their common-law duty of reasonable care," the primary thrust of Plaintiff's First Amended Complaint is that Defendants engaged in intentional conduct such as "distorting" and including "misinformation" in Plaintiff's file and acting in furtherance of a "vendetta" to remove him from LMC. Allegations of intentional conduct, though, cannot support a negligence claim. <u>See Horne v. Cumberland Cty. Hosp. Sys., Inc.</u>, 228 N.C. App. 142, 149, 746 S.E.2d 13, 19 (2013) ("Allegations of intentional conduct, ... even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim").

The undersigned will therefore recommend that Plaintiff's negligence claim be dismissed.

### 3. Negligent or Intentional Infliction of Emotional Distress

The elements of negligent infliction of emotional distress are "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress ..., and (3) the conduct did in fact cause the plaintiff severe emotional distress." <u>Acosta v. Byrum</u>, 180 N.C.App. 562, 567, 638 S.E.2d 246, 250 (2006) (internal quotation marks omitted).

18

"A claim for intentional infliction of emotional distress requires the existence of three elements: (1) extreme and outrageous conduct; (2) which is intended to cause and does cause (3) severe emotional distress to another." May v. City of Durham, 136 N.C.App. 578, 586, 525 S.E.2d 223, 230 (2000).

Severe emotional distress is "'any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" Strickland v. Jewell, 562 F. Supp. 2d 661, 676 (M.D.N.C. 2007) (discussing intentional infliction of emotional distress claim) (quoting Johnson v. Ruark Obstetrics, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (discussing negligent infliction of emotional distress).

Here, Plaintiff makes only a conclusory allegation that he experienced "severe emotional distress and/or damage," without specifying "any emotional or mental disorder" he developed. Doc. 13 at ¶ 67.

Further, with respect to Plaintiff's claim for negligent infliction of emotional distress, as discussed above, Plaintiff's allegations describe intentional, not negligent, conduct. See Darden v. Pebble Beach Realty, Inc., 860 F.Supp. 1101, 1109 (E.D.N.C. 1993) (plaintiff's claim of negligent infliction of emotional distress fails because "there was no negligence."); Williams v. Altec Indus., No. 5:10–CV–356–BO, 2011 WL 3420444, * 4

19

(E.D.N.C. Aug.3, 2011) (if there is no underlying negligence, there is no claim for negligent infliction of emotional distress) (citations and quotations omitted)).

Additionally, with respect to Plaintiff's claim for intentional infliction of emotional distress, Plaintiff must allege "extreme and outrageous conduct," i.e., conduct that "exceeds all bounds usually tolerated by decent society." Beck v. City of Durham, 154 N.C.App. 221, 231, 573 S.E.2d 183, 191 (2002) (citations omitted). "To be considered 'extreme and outrageous' the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000) (internal quotation marks omitted).

North Carolina courts have set a high bar with respect to what constitutes outrageous conduct, and Plaintiff's allegations here do not clear that threshold. Compare Dobson v. Harris, 134 N.C.App. 573, 578–579, 521 S.E.2d 710, 715 (1999) (making exaggerated report of child abuse to the Department of Social Services not extreme and outrageous), rev'd on other grounds, 352 N.C. 77, 530 S.E.2d 829 (2000); Eubanks v. State Farm Fire & Cas. Co., 126 N.C.App. 483, 487, 485 S.E.2d 870, 872 (soliciting the commission of murder is an extreme and outrageous act), disc. review denied, 347 N.C. 265, 493 S.E.2d 452 (1997), Hogan v. Forsyth Country Club

<u>Co.</u>, 79 N.C.App. 483, 491, 494, 340 S.E.2d 116, 122, 123 (1986) (requiring pregnant plaintiff/employee to carry heavy loads and refusing to allow her leave to go to the hospital is not extreme and outrageous conduct, but unwelcome sexual advances coupled with threats of bodily injury are).

The undersigned will therefore recommend that Plaintiff's claims of intentional or negligent infliction of emotional distress be dismissed.

### 4. Breach of Contract

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." <u>Giabourani v. Wells Fargo Bank, N.A.</u>, No. 2:12-CV-00042-MR, 2015 WL 5714538, at *10 (W.D.N.C. Sept. 29, 2015), aff'd, 670 F. App'x 177 (4th Cir. 2016) (internal quotation marks omitted). "In the educational context, the North Carolina Court of Appeals has recognized that a student can, in some circumstances, bring a claim against a college or university for breach of contract." <u>McFadyen v. Duke Univ.</u>, 786 F. Supp. 2d 887, 981 (M.D.N.C. 2011), <u>aff'd in part, rev'd in part, dismissed in part sub nom. Evans v. Chalmers</u>, 703 F.3d 636 (4th Cir. 2012) (citing <u>Ross v. Creighton Univ.</u>, 957 F.2d 410, 417 (7th Cir.1992) (there is a potential claim for breach of contract "if, for example, 'the defendant took tuition money and then provided no education, or alternately, promised a set number of hours of instruction and then failed to deliver'")).

However, "not all aspects of the student/university relationship are subject to a contract remedy, and it is a plaintiff's obligation to point to a mutual agreement with sufficiently definite terms or obligations." McFadyen v. Duke Univ., 786 F. Supp. 2d at 982. "[T]he North Carolina Court of Appeals has explained that a breach of contract claim against a university survives a motion to dismiss only where the complaint alleges some "identifiable contractual promise" that the university failed to honor." Neal v. Univ. of N. Carolina, No. 5:17-CV-00186-BR, 2018 WL 2027730, at *6 (E.D.N.C. May 1, 2018).

Here, Plaintiff alleges that LMC created express and implied contracts with him when he "accepted an offer of admission" and paid tuition and fees and further that "[a] material condition or conditions of the contract were that LMC recognized the special needs of Plaintiff due to his ADHD, and federally recognized disabilities, which it represented to Plaintiff, and his family, that it both could and would provide special accommodations." Doc. 13 at ¶ 71.[8] Additionally, Plaintiff characterizes as contractual the "promises, rules, and procedures set forth and established in the Student Code of Conduct and the Rules and Regulations of the College," Doc. 13 at ¶

---

[8] In his briefing, Plaintiff lists, as examples of broken contractual promises, "the most basic failure to provide access to the cafeteria services Plaintiff was required to purchase [and] the overarching misrepresentation of the College's willingness and ability to accommodate students with special needs." Doc. 21 at 16.

73, including the "mandates established" by the ADA and the procedures applicable to investigating and prosecuting claims of student misconduct. Id. at ¶ 74. In short, Plaintiff bases his breach of contract claim on Defendants' alleged failure to accommodate his disability adequately and to follow procedures set out in the Student Code of Conduct and the Rules and Regulations of LMC.

Plaintiff, however, has not alleged an identifiable contractual promise made by LMC. See Hoppe v. College of Notre Dame of Maryland, 835 F.Supp.2d 26, (D. Md. 2011) (granting summary judgment dismissing plaintiff's breach of contract claim based on defendant's alleged promise to meet College's " pre-existing legal duty under the ADA and the Rehabilitation Act to reasonably accommodate Hoppe during her exams.") (citing Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law, 570 F.Supp.2d 1, 4-5, 11-12 (D.D.C. 2008) (dismissing learning-disabled student's breach of contract claim alleging that although her law school had promised in a letter to reasonably accommodate her during the semester, it had not; the claim "fail[ed] for lack of consideration" because the letter obligated the school to provide "nothing more than [it] was required to provide by [disability] law")).

Additionally, as a general rule, "a university's academic bulletins and policies cannot be the basis of a breach of contract claim unless the bulletin or policy provision is a specific, enforceable promise that is incorporated into the

terms of a contract between the university and the student." <u>McFadyen v.</u> <u>Duke Univ.</u>, 786 F. Supp. 2d at 982; <u>see also</u> <u>Shaw v. Elon Univ.</u>, 400 F. Supp. 3d at 365 ("most North Carolina lower courts and federal courts applying North Carolina law have found that university handbooks, bulletins, guidelines, codes of conduct, manuals, and the like are not independently enforceable contracts."). "Rather, terms found in such unilaterally produced documents must be explicitly included in or incorporated into a valid and enforceable contract for those terms themselves to become enforceable obligations." <u>Id</u>. "[A]bsent an allegation of an enforceable contract explicitly including or incorporating policies or procedures outlined in a college handbook, a student cannot premise a breach of contract claim on those policies and procedures." <u>Shaw v. Elon Univ.</u>, 400 F. Supp. 3d at 366.

Furthermore, this Court has found that LMC's Code of Student Conduct does not constitute a contract because the handbook could be changed "at any time, without consideration." <u>Cash v. Lees-McRae Coll., Inc.</u>, 2018 WL 7297876 at *12. The student handbook at issue in this case contains identical language as that in <u>Cash</u>. <u>See</u> Doc. 20-1 at 2 ("The College reserves the right to make changes in the provisions of this handbook.").[9]

_____

[9] Courts have found contracts related to student codes of conduct or handbooks to exist in very limited circumstances. For example, in <u>Myers v. Bradford Preparatory</u>

Finally, a general assurance of a "safe, supportive, accommodating campus environment" does not suggest an obligation to be bound to any specific or identifiable course of conduct and thus and is not an "identifiable contractual promise," as required by North Carolina law. See McFadyen v. Duke Univ., 786 F.Supp.2d at 983 ("[a] general policy against harassment" did not constitute a contract because it did not "provide any indication of any mutual agreement between Duke and its students" and there was no indication of "any intent by Duke to be bound to any particular obligation or course of conduct based on a general policy").

The undersigned will therefore recommend that Plaintiff's breach of contract claim be dismissed.

### 5. Fraud in the Inducement

The elements of fraud in the inducement are "(1) a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew the representation was false or made it recklessly without knowledge of the truth as a positive assertion, (4) the representation was made with the intention that it should be acted upon by the party, (5) the party acted in reliance upon it, and (6) the party thereby

---

Sch., No. 3:17-CV-099-RJC-DCK, 2017 WL 6820203, at *1 (W.D.N.C. Oct. 19, 2017), report and recommendation adopted, No. 317CV00099RJCDCK, 2018 WL 325310 (W.D.N.C. Jan. 8, 2018), students formed contracts "by signing agreements related to" the code of conduct and handbook. In this case, there is no allegation that Plaintiff signed agreements.

suffered injury." <u>Aramark Unif. & Career Apparel, LLC v. Hernandez</u>, No. 7:16-CV-336-BR, 2018 WL 4623648, at * 8 (E.D.N.C. Sept. 26, 2018).

Allegations of fraud in the inducement must meet the heightened pleading standards under Fed. R. Civ. P. 9, which requires that "a party must state with particularity the circumstances constituting fraud or mistake." <u>Creative Snacks, Co., LLC v. Hello Delicious Brands LLC</u>, No. 1:17CV50, 2017 WL 4043564, at *6 (M.D.N.C. Sept. 12, 2017) ("Because fraud in the inducement is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party alleging fraud to "state with particularity the circumstances constituting fraud", a plaintiff's generalities and conclusory allegations that a defendant never intended to honor its contractual obligations are insufficient."). "Courts apply this to mean that plaintiffs must set out the time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby." <u>Wilson v. McAleer</u>, 368 F. Supp. 2d 472, 475 (M.D.N.C. 2005) (internal quotation marks omitted).

Here, Plaintiff alleges that he enrolled at LMC due to "knowingly fraudulent misrepresentations made by LMC personnel regarding the College's programs and commitment to provide accommodations in support of students like Plaintiff with special needs," that "LMC did not address the

needs of students with special need[s] adequately," and that, "as a direct and proximate result...Plaintiff has been damaged." Doc. 13 at ¶¶ 72, 77, 78.

However, while Plaintiff alleges the general nature of the misrepresentations, he does not allege them with specificity, nor does he set forth the time and place of the misrepresentations or the identity of each person making the misrepresentations.

For these reasons, the undersigned will recommend that Plaintiff's claim of fraudulent inducement be dismissed.

### 6. Claims Against the Individual Defendants

In addition to contesting the adequacy of Plaintiff's allegations with respect to each claim, Defendants also assert that Plaintiff's claims against King, Driggers, and Gaisser should be dismissed.

As discussed above, the undersigned finds that the only claims that have been alleged adequately are those for alleged violations of the ADA and the Rehabilitation Act. Yet, "[n]either the ADA nor the Rehabilitation Act authorizes suits for monetary damages against Defendants in their individual capacities." Moneyhan v. Keller, 563 Fed. Appx. 256, 258 (4th Cir. 2014) (citing Garcia v. S.U.N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir.2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the

Rehabilitation Act provides for individual capacity suits against state officials.").[10]

The undersigned will therefore recommend that Plaintiff's claims against King, Driggers, and Gaisser be dismissed.

## III. Motion to Strike

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, impertinent, or scandalous matter." <u>Simaan, Inc. v. BP Prod. N. Am., Inc.</u>, 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005); <u>see also</u> <u>Sturdivant v. Arc of Haywood Cty.</u>, Inc., No. 1:18 CV 123, 2018 WL 2138543, at *1 (W.D.N.C. May 9, 2018) (explaining that "immaterial" matter "has no essential or important relationship to the claim or defenses, "impertinent" describes information that does not pertain and is not necessary, and that "scandalous" material

---

[10] Additionally, although the First Amended Complaint names King, Driggers, and Gaisser in their "official" capacities, it also alleges that LMC is a "private educational institution." Doc. 13 at 2 ¶ 5. Because LMC is the appropriate defendant against which to bring the ADA and Rehabilitation Act claim, it does not appear that there is any reason to bring a claim against the individual defendants in their "official" capacities. <u>See</u> <u>Coddington v. Adelphi University</u>, 45 F.Supp.2d 211, 217 (E.D.N.Y. 1999) ("Official capacity lawsuits are appropriate in cases involving the naming of government officials. Where, as here, there is a private entity to name, there is no reason to allow a plaintiff to proceed against an individual in his 'official capacity'").

"reflects on a party's moral character or detracts from the dignity of the court").

"In a motion to strike, the burden is high and rests with the movant." <u>Sturdivant</u>, 2018 WL 2138543, at *1. "Motions to strike are not favored, and any doubts about whether the motion should be granted should be resolved in favor of the non-moving party." <u>Sturdivant</u>, 2018 WL 2138543, at *1 (citing <u>Lane v. Endurance Am. Specialty Ins. Co.</u>, No. 3:10-CV-401-MOC-DCK, 2011 WL 1343201, at *2-3 (W.D.N.C. April 8, 2011)); <u>see also</u> <u>Waste Mgmt. Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001); <u>Scherer v. Steel Creek Prop. Owners Ass'n</u>, No. 1:13CV121, 2014 WL 813824, at *1 (W.D.N.C. Mar. 3, 2014) (motions to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.") (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed.2004)).

### B. Discussion

Here, Defendants seek to strike two sets of allegations: first, that LMC has "one of the worst student retention/graduation rates in the country," Doc. 20 at 24 (quoting Doc. 12 at 12 ¶ 72), and, second, that Gaisser and Driggers were "dismissed from their positions," <u>id</u>. (quoting Doc. 12 at 9 ¶ 45).

29

Plaintiff argues that the allegation that LMC has a low retention or graduation rate is material to Plaintiff's contention that LMC has failed to support and accommodate "special-needs students." Doc. 21 at 20. Plaintiff further contends that "[i]f as Plaintiff has alleged, the College dismissed Gaisser and Driggers because it was alarmed by their mishandling of situations involving special-needs students, such action evidences the College's consciousness of wrongdoing." Id.

Although it is not clear on the current record whether these allegations are particularly material, the undersigned cannot say that they have "no possible relation or logical connection" to the matter at hand. Nor does the undersigned consider these allegations to be impertinent or scandalous. Finally, the undersigned is not persuaded that they would cause "significant prejudice" to Defendants if allowed to remain on the record.

For these reasons, the undersigned will recommend that the Motion to Strike be denied.

## IV. Recommendation

For the reasons stated, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative, to Strike (Doc. 17) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion to Dismiss be **GRANTED** and the following claims be **DISMISSED**:

   a. The claim of negligence;

   b. The claims of intentional and negligent infliction of emotional distress;

   c. The claim of fraud in the inducement/breach of contract; and

   d. The claims against Defendants King, Driggers, and Gaisser.

2. The Motion to Dismiss be **DENIED** as to Plaintiff's claims against LMC under the ADA and Rehabilitation Act.

3. The Motion to Strike be **DENIED**.

Signed: February 4, 2021

W. Carleton Metcalf
United States Magistrate Judge

31

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).